

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**UNITED STATES OF AMERICA,**

    **v.**                                                  **CRIMINAL NO. 2:21-cr-122**

**FLOYD WAYNE WOODWARD, III,**

    **Defendant.**

### *MEMORANDUM OPINION & ORDER*

Before the Court is Floyd Wayne Woodward, III's ("Defendant") Motion to Revoke Order of Detention, pursuant to 18 U.S.C. § 3145(b). Def.'s Mot. Revoke Order Det., ECF No. 24 ("Def.'s Mot."). The Court has considered the memoranda of both parties and finds that a hearing on this matter is not necessary.[1] *Id.*; *see also* Gov't's Resp. Opp., ECF No. 26 ("Gov't's Resp."); Def.'s Reply to Gov't's Resp. Opp., ECF No. 27 ("Def.'s Reply"). Accordingly, this matter is ripe for judicial determination. For the reasons stated below, Defendant's Motion is **DENIED**.

### I.  BACKGROUND & PROCEDURAL HISTORY

On September 27, 2021, Defendant was named in a criminal complaint, charging him with Sale of a Firearm to a Convicted Felon, in violation of 18 U.S.C. § 922(d)(1), and Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). Crim. Compl., ECF No. 3. On September 28, 2021, Defendant was arrested in Norfolk, Virginia. Arrest Warrant, ECF No. 7. That same day, Defendant appeared in custody before Magistrate Judge Robert J. Krask for his initial appearance. Initial Appear. Mins., ECF No. 8. At the conclusion of the hearing, Judge Krask

---

[1] The Court acknowledges that Defendant requests a *de novo* hearing on this issue "[i]f additional evidentiary support is necessary." Def's Mot. 11. Having considered the memoranda of both parties and the transcript of the detention hearing, the Court finds it does not need additional evidentiary support nor oral argument. Accordingly, the Court will rule on the motion without a hearing. *See* E.D. VA. LOCAL CRIM. R. 47(J).

entered a temporary detention order and remanded Defendant to the custody of the U.S. Marshal. *Id.*; *see also* Temp. Det. Order, ECF No. 10.

On October 1, 2021, Defendant appeared in custody and with counsel before Judge Krask for a detention and preliminary hearing. Arraign. & Det. Mins., ECF No. 12. Defendant waived his right to a preliminary hearing, Judge Krask found probable cause to support the charges, and the parties proceeded with a detention hearing. *Id.* During the hearing, the Government moved for detention and Defendant sought release. *See* Det. Hr'g Tr., ECF No. 25 ("Hr'g Tr."). Following proffer and argument, Judge Krask granted the Government's motion and ordered Defendant detained pending trial. Arraign & Det. Mins. 1; Order of Det. Pend. Trial, ECF No. 16 ("Det. Order"). Specifically, Judge Krask found, (1) by clear and convincing evidence, that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community, and, (2) by a preponderance of evidence, that no condition or combination of conditions of release will reasonably assure Defendant's appearance as required. Det. Order. 2. Judge Krask entered detailed factual findings on the record and cited the following reasons for his decision: the weight of evidence against Defendant is strong; Defendant's prior criminal history; Defendant's participation in criminal activity while on probation, parole, or supervision; Defendant's history of violence or use of weapons; and Defendant's prior failure to appear in court as ordered. *Id.* at 2-3. Judge Krask also emphasized several statements Defendant made indicating that he is a danger to the community, including that he would murder anyone who attempted to take his weapons from him and that, if they tried, he would "shoot them in the face and bury them in his backyard." *Id.* at 3. Defendant also purchased armor-piercing ammunition. *Id.*

On October 7, 2021, Defendant was named in a two-count Criminal Information, charging him with Sale of a Firearm to a Prohibited Person, in violation of 18 U.S.C. § 922(d)(1) (Count I),

and Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) (Count II). Crim. Info., ECF No. 17. On October 26, 2021, Defendant pled guilty to Counts I and II of the Criminal Information, and the Court accepted his plea and found him guilty. Guilty Plea Hr'g Mins., ECF No. 20. Sentencing is currently scheduled for February 28, 2022. Def.'s Mot. 2. On November 18, 2021, Defendant filed a motion to revoke the detention order Judge Krask entered. Def.'s Mot. A transcript of the detention hearing proceeding was filed on November 24, 2021. Hr'g Tr. The Government opposed Defendant's motion on December 8, 2021. Gov't's Resp. Defendant replied on December 14, 2021. Def.'s Reply.

## II.   LEGAL STANDARD

A defendant ordered detained by a magistrate judge may appeal the order for review by the district court. 18 U.S.C. § 3145(b); *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985). "When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (citation omitted); *see also United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989). (citations omitted). In making that independent determination, "the district court need not conduct a new pretrial detention hearing; rather, the court may base its decision on the transcript of the original detention hearing and any additional evidence proffered by counsel." *United States v. Burgess*, No. 2:17-CR-153, 2017 WL 6542939, at *1 (E.D. VA. Dec. 19, 2017) (citing *United States v. Boyd*, 484 F. Supp. 2d 486, 487 (E.D. VA. 2007)).

The Bail Reform Act of 1984 provides that a defendant shall be detained pending trial if a Court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §

3142(e). To obtain a detention order, the Government must prove the court appearance or "flight risk" issue by a preponderance of the evidence, *Stewart*, 19 F. App'x at 48, and the safety of the community – measured by whether a defendant presents a danger to the community – by clear and convincing evidence, *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005). "For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient, both are not required." *Stewart*, 19 F. App'x at 48 (citation omitted). In determining whether a defendant should be detained pending trial, courts consider the following factors: (1) the nature and circumstance of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and personal characteristics; and (4) the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. 3142(g).

## III.   DISCUSSION

### A. Nature and Circumstances of the Offense Charged

Defendant pled guilty to one count of Sale of a Firearm to a Prohibited Person, in violation of 18 U.S.C. § 922(d)(1), and one count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). Guilty Plea Hr'g Mins. Pursuant to 18 U.S.C. § 922(d)(1) and 18 U.S.C. § 922(g)(1), Defendant faces a maximum term of 10 years' imprisonment for each count, meaning he faces up to 20 years' imprisonment in total.

According to the agreed-upon Statement of Facts detailing the conduct to which Defendant has pled guilty, on June 17, 2021, a complainant contacted the Federal Bureau of Investigation (FBI) National Threat Operations Center to report that Defendant was bragging about how he was soon going to be in possession of un-serialized AR-15s. Statement of Facts ¶ 1, ECF No. 22 ("SOF"). Defendant has previously been convicted of multiple felonies, including

4

grand larceny, burglary, and grand larceny auto theft. *Id.* at ¶ 2. Defendant purchased three un-serialized assault rifles from an individual who assembled them himself in Florida and then transported them to Virginia. *Id.* at ¶ 3. Afterward, Defendant encountered a confidential human source (CHS), who Defendant knew was a previously convicted felon, and sold him one black un-serialized AR-15 style assault rifle, 250 rounds of .223 ammunition, and one rifle magazine for eight hundred dollars. *Id.* at ¶¶ 5, 7. On August 27, 2021, after the CHS had told Defendant he was interested in purchasing additional firearms from him, Defendant brokered a firearm transaction between the CHS and the individual in Florida from whom Defendant originally bought the three assault rifles. *Id.* at ¶ 10. On September 24, 2021, the CHS traveled to Florida and purchased from the individual six un-serialized AR-15s and AR style pistols, one of which was for Defendant. *Id.* at ¶¶ 11-12. The CHS also obtained a serialized .308 bolt action rifle for Defendant. *Id.* at ¶ 12. On September 28, 2021, Defendant met with the CHS in Virginia to obtain the firearms the CHS purchased in Florida and brought to Virginia. *Id.* at ¶ 13. Later that same day, the FBI executed a search warrant at Defendant's residence and seized an un-serialized black AR-15, an un-serialized green AR-15, and approximately 862 rounds of ammunition. *Id.* at ¶ 14.

As Judge Krask noted, the nature of the charges against Defendant are already serious and, by nature, endanger the community. Det. Order 3. The circumstances of the particular charges against Defendant are even more serious and pose a more significant endangerment. Specifically, not only did Defendant – as a convicted felon – possess a firearm and sell a firearm to another convicted felon, but Defendant also acquired multiple un-serialized firearms that are "designed to evade law enforcement." Det. Order 3. As the Government proffered during the detention hearing, the fact that Defendant intentionally attempted to avoid detection by law

5

enforcement – whose history of investigating firearm crimes is tied to legitimate gun makers, serialized guns, and straw purchasers – by purchasing un-serialized assault rifles makes this crime all the more serious. Hr'g Tr. 24:03-12. Defendant's contention that these guns "never hit the street" is unpersuasive considering he had already sold one of the guns by the time he was arrested. *Id.* at 9:01-02. That Defendant happened to have sold the gun, unknowingly, to a CHS and that law enforcement acted expeditiously to prevent further potential sales of un-serialized guns by Defendant does not weigh in his favor.[2] Without these law-enforcement-created "fortuities," Defendant's action and intentions could very well have caused these un-serialized assault style weapons to "hit the street." Further, while the Court credits Defendant for his cooperation with law enforcement after his arrest, that does not negate the dangerous nature and circumstances of his crime. Hr'g Tr. 9:04-09.

Moreover, the Government also argued during the detention hearing that, presently, some of Defendant's co-conspirators live in Florida and remain unidentified. Hr'g Tr. 22:20-23:01. While Defendant noted that one of the Florida co-conspirators has been arrested, the fact remains that other unidentified co-conspirators could still be in the community, thereby leaving open Defendant's risk of flight and further danger to the community. *Id.* at 26:03-05. Thus, the serious and dangerous nature and circumstances of the charges weigh against Defendant's release.

### B. Weight of the Evidence Against Defendant

As mentioned, Defendant pled guilty to both counts of the Criminal Information on

---

[2] The Court notes that Defendant's attempt to justify selling an un-serialized AR-15 to a convicted felon is also exceedingly unpersuasive. Def.'s Reply 2-3. Defendant argues that because he believed the CHS needed the firearm for "self-protection" from a man whom he had just fired, Defendant was therefore "*not* providing anyone a gun to cause danger or violence," but instead was "helping keep a friend safe." *Id.* at 3 (emphasis in original). Defendant's twist on supplying a convicted felon with an illegal assault weapon with the express understanding that he felt he might need to *use* it in the near future, regardless of the reason, is simultaneously shocking, contradictory, and supportive of the argument that Defendant's illegal conduct could have created harm and danger to the community.

October 26, 2021. Guilty Plea Hr'g Mins. Therefore, the weight of evidence and Defendant's guilt at this point are established.

### C. Defendant's History and Personal Characteristics

Defendant is 42 years old and has resided in the Virginia Beach area since around 2016. Def.'s Mot. 5, 6. He is married and has two daughters and two stepsons. *Id.* If released, he would live with his wife in Portsmouth, Virginia and would also receive support from his mother-in-law, who lives about fifteen minutes away from Defendant and his wife. *Id.* at 7. Upon graduating from high school, Defendant served in the U.S. Marine Corps as an aviation electrician for eight years until he received an honorable discharge. *Id.* at 5. Afterward, he was been regularly employed and lived in Ohio, Texas, and North Carolina. *Id.* at 6. Since moving to Virginia Beach, Defendant has held various jobs and, in December 2020, started his own construction company, which he operated until his arrest. *Id.* It is of note, however, that during the detention hearing, the Government proffered that Defendant lost his job over the course of the FBI investigation in this case and, as a result, considered selling the firearms at issue to support himself. Hr'g Tr. 7:04-07.

Defendant also has a criminal history dating back to 2009. Def.'s Mot. 6. Specifically, Defendant has been convicted of (1) unauthorized use of a motor vehicle and felony failure to appear on December 8, 2009 in Columbus, Ohio; (2) domestic violence on December 3, 2012 in Columbus, Ohio; (3) petit larceny on December 14, 2017 in Virginia Beach, Virginia; and (4) grand larceny – auto and burglary – on May 1, 2018 in Virginia Beach, Virginia. *Id.* For his most recent conviction, Defendant received a suspended sentence of five year's imprisonment with five years of good behavior. *Id.* at n. 3. Defendant therefore committed the instant crime while on

unsupervised probation, the primary requirement of which is that he not violate the law.[3]

Thus, despite Defendant's ties to the community and strong history of employment, his criminal history indicates that he has a propensity to commit crime. Indeed, while his failure to appear charge occurred twelve years ago and the circumstances behind it do not necessarily indicate, by itself, that he is a flight risk, Hr'g Tr. 18:11-19:08, the fact that Defendant has continued to commit crimes since moving to this area – and while on unsupervised probation for a crime he committed in this area – indicate that he remains a danger to the community.

### D. Nature and Seriousness of the Danger Defendant Poses to the Community

The nature of the charges against him, as previously discussed, indicate an inherent danger to the community. Moreover, during the detention hearing, the Government proffered that Defendant is openly anti-government. Hr'g Tr. 6:16-17. Defendant explained that he is anti-President Biden and the Biden administration because he is against the "socialism" "direction this country is moving" toward. *Id.* at 29:19-22. He stated that his views do not mean that he would want any harm to come to the United States nor that he should be deemed a danger to the community. *Id.* at 29:23-30:01. However, Judge Krask found that Facebook took down Defendant's page because he posted anti-government extremist rhetoric. *Id.* 33:04-06. On another occasion, Defendant had stated "he keeps his weapons ready to be fired" and that "if anyone came for his weapons, he would shoot them in the face and bury them in his backyard." *Id.* at 32:17-21. He further stated that "if people came for the guns, they would have armor, and that they would be armor-piercing rounds." *Id.* at 6:18-21. In fact, during the CHS's trip to Florida to purchase the un-serialized AR-15s, Defendant also asked him to purchase "armor-

---

[3] The Court takes note of the dispute regarding Defendant's probation status and the outstanding bench warrant from Ohio, which was recently rescinded. Def.'s Reply Ex. 1. The Court will therefore not consider the bench warrant as a factor in its analysis.

piercing" ammunition. *Id.* at 6:22-24. In other words, Defendant openly and explicitly stated and acted in furtherance of his intent to bring fatal harm to someone in response to the exact events that have occurred here: namely, that law enforcement arrested him and seized his firearms. Therefore, the Court cannot, in good conscience, order Defendant's release assured that he poses no danger to the community; indeed, the Court finds that he is a significant danger.

The Court does not doubt that Defendant's wife or mother-in-law are suitable to serve as third-party custodians, as Defendant offers. Def.'s Mot. 7. As Judge Krask concluded, however, that is not the issue; "[t]he issue is [D]efendant's suitability to be supervised by a third-party custodian and his willingness to comply with conditions of release under the tutelage of someone else." Hr'g Tr. 35:15-10. For all of the aforementioned reasons and the fact that release would place him in the conditions he faced before he was arrested, the Court does not believe Defendant is suitable to be supervised by a third-party custodian. Moreover, the Court is not convinced that home detention with electronic monitoring or a secured bond would reasonably protect against his flight risk or the danger he poses to the community. *See* Def.'s Mot. 10.

The Court finds that no condition or combination of conditions will reasonably assure the Defendant's appearance as required and the safety of any other person and the community Thus, the Court agrees with the magistrate judge that Defendant should be detained pending trial.

## IV. CONCLUSION

For the reasons stated on the record and discussed above, Defendant's Motion to Revoke Order of Detention is **DENIED**. The Court **DIRECTS** the Clerk to provide a copy of this Order to Defendant and the United States Attorney.

**IT IS SO ORDERED**.

Norfolk, Virginia
December 16, 2021

Raymond A. Jackson
United States District Judge

9