# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
# Norfolk Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 2:21CR122 |
| | ) | |
| FLOYD WAYNE WOODWARD, | ) | |
| | ) | |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING FACTORS

The United States of America, by Jessica D. Aber, United States Attorney, Matthew J. Heck, Special Assistant United States Attorney, and Joseph Depadilla, Assistant United States Attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. § 3553(a). The government has no objection to the content of the Presentence Investigation Report (PSR). According to the PSR, the correct advisory calculation under the United States Sentencing Guidelines (U.S.S.G., or "Guidelines) is 57 to 71 months of imprisonment, and one to three years of supervised release. Based on the nature of the offense, and the defendant's characteristics, the United States respectfully requests that the court impose a sentence of 57 months, coupled with 3 years of supervised release. This is sufficient, but not greater than necessary, to accomplish the goals set forth in 18 U.S.C. §3553(a).

### I. ADDITIONAL POINT FOR ACCEPTANCE OF RESPONSIBILITY

Because of the defendant's timely plea, a motion to reduce the offense level an additional one point under U.S.S.G. § 3E1.1 is appropriate as has been done in this case. The government agreed to that in the plea agreement. ECF No. 29.

## II. PROCEDURAL BACKGROUND

On September 28, 2021, FLOYD WAYNE WOODWARD (hereinafter WOODWARD) was arrested via criminal complaint. ECF No. 3. That same day, the defendant made his initial appearance and was temporarily detained. ECF No. 8. The defendant has remained in custody since that time. On October 26, 2021, the defendant pled guilty to a criminal information charging him with the sale of a firearm to a prohibited person, in violation of 18 U.S.C. § 922(d)(1) and with the possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). ECF. No. 20.

## III. FACTUAL BACKGROUND

In June of 2021, the FBI received a complaint alleging WOODWARD would soon come into possession of un-serialized AR-15s. PSR at ¶ 5.1. Later, a confidential human source (CHS) came into contact with WOODWARD, WOODWARD knew the CHS to be a convicted felon. PSR at ¶ 5.5. WOODWARD later suggested that he could sell the CHS one of the three un-serialized AR-15s he had recently acquired. PSR at ¶ 5.6. On August 5, 2021, the CHS travelled to WOODWARD's residence and purchased one black un-serialized AR-15, 250 rounds of ammunition, and one rifle magazine. PSR at ¶ 5.7. After the sale, the CHS informed WOODWARD he would be interested in procuring additional firearms.

On August 27, 2021, WOODWARD facilitated direct contact via a three-way phone conversation between the CHS and WOODWRAD's source of supply (hereinafter referred to as A.D.). PSR at ¶ 5.10. On or about September 24, 2021, the CHS travelled to Florida to meet with A.D. where he/she purchased six (6) un-serialized AR-15s and AR style pistols from A.D. Five (5) of these firearms were for the CHS and one was for WOODWARD. PSR at ¶ 5.12.

On September 28, 2021, WOODWARD met with the CHS in Chesapeake, Virginia, to obtain two (2) of the firearms that the CHS transported from Florida. PSR at ¶ 5.13. That same day, the FBI executed a search warrant on WOODWARD's residence and seized two un-serialized AR-15s and 862 rounds of ammunition. PSR at ¶ 5.14.

## IV. STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 S. Ct. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 564. Finally, in *Gall v. United States*, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 596-97. The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they

deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

## V. FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court must consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

### A.     Nature and Circumstances of the Offense

The nature and circumstances of WOODWARD's crime are serious. Un-serialized firearms or "ghost guns" are untraceable by law enforcement. If one of these firearms had been used in a crime, law enforcement would struggle to initiate any leads in the case. Not only did the defendant proliferate these firearms into the community, but he sold them to a convicted felon. Put simply, the defendant put an untraceable semi-automatic firearm into the hands of a person he knew should not have it. This is an egregious crime.

For these same reasons, the defendant's actions cannot be equated to that of a straw purchaser. First those cases involve documented gun sales. Law enforcement can utilize databases at their disposal to identify individuals purchasing large or regular amounts of

firearms.  This can assist law enforcement in preventing the proliferation of firearms to criminals by cutting off their source.  In this case there was no such way to identify WOODWARD.  Second, when serialized firearms are utilized in a crime law enforcement can develop leads and may be able to trace that firearm to the individual who used it.  An un-serialized firearm can produce no such investigative leads.  This makes them particularly dangerous and a significant threat to the safety of the community.  These crimes are not equivalent, and the court should not treat them as such.

  Of significance is the fact that the defendant was selling an AR-15 semi-automatic rifle.  "AR-15 type rifles are civilian weapons patterned after the U.S. military's M-16 rifle." Christopher S. Koper, "An Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets and Gun Violence, 1994-2003," Report to the National Institute of Justice, United States Department of Justice (June 2004).  These rifles have also been used in many of the deadliest shootings of the last decade, specifically in San Bernadino, California, Sandy Hook Elementary School, and Pulse Nightclub.  Greg Myre, *A Brief History of the AR-15*, NPR (February 28, 2018), https://www.npr.org/2018/02/28/588861820/a-brief-history-of-the-ar-15.  The Government acknowledges that the firearms in this case were never used in a crime.  However, that does not make the AR-15s in question any less dangerous.  It is disturbing that an untraceable version of such a dangerous firearm was present in our community.  Moreover, the defendant was involved in the possession or distribution of nine (9) such untraceable AR-15s.  Therefore, a sentence of 57 months incarceration is appropriate in this case.

B.  **Defendant's History and Characteristics**

WOODWARD's history and characteristics strongly weigh in favor of the government's recommended sentence. While this is WOODWARD's first federal felony conviction, he has prior criminal convictions and probation violations. PSR at ¶ 29-33. Furthermore, he committed the instant offense while under a criminal justice sentence. PSR at ¶ 34, 36. His criminal history when considered in conjunction with his current criminal conduct reveal an individual who has little regard for the law.

Nothing in the defendant's background explain the instant offenses. He described his childhood as "wonderful." PSR at ¶ 42. Upon graduating from high school, the defendant joined the United States Marine Corps where he served honorably for 8 years. PSR at ¶ 43, 64. Since his discharge the defendant has been able to support himself and prior to his incarceration he owned his own construction business. PSR at ¶ 59.

To his credit, WOODWARD has cooperated fully with law enforcement. WOODWARD was honest about his criminal conduct when interviewed by law enforcement. Furthermore, WOODWARD has taken full responsibility for his actions. In crafting its recommended sentence to the court, the Government considered these mitigating factors. As a result, we are requesting a sentence at the low end of the sentencing guidelines.

C.  **Need to Deter Future Criminal Conduct and to Protect the Public**

As noted above WOODWARD has demonstrated time and again that he has little regard for the law. While he has not faced significant periods of incarceration prior to the instant offense, it is clear WOODWARD must be specifically deterred. Therefore, strong message should be sent to WOODWARD and a sentence of 57 months incarceration does exactly that.

This court must also consider the impact of general deterrence in this case and the threat that "ghost guns" present to the community. The presence of "ghost guns" in our communities is on the rise. "From January 1, 2016, through December 31, 2020, there were approximately 23,906 suspected [ghost guns] reported to ATF as having been recovered by law enforcement…including in connection with 325 homicides or attempted homicides." Justice Department of Violent Crime Reduction Fact Sheet, www.justice.gov. These untraceable firearms represent a significant threat to the community and WOODWARD actively engaged in their dissemination. These firearms present a much larger threat to the community than firearms acquired by traditional means and their distribution is becoming more prevalent. Therefore, it is incumbent upon the government to seek a sentence that those who decide to distribute these firearms will be punished harshly. A sentence of 57 months incarceration sends that message.

D.     Other Factors to be Considered under 18 U.S.C. 3553(a)

This court should look to similar cases of individuals with similar records and avoid unwarranted disparities in sentencing. In the Northern District of New York, a defendant was sentenced to 30 months in prison followed by two years of supervised release for manufacturing and selling 19 "ghost guns." U.S. Attorney's Office for the Northern District of New York, September 2, 2021, https://www.justice.gov/usao-ndny/pr/montgomery-county-man-sentenced-30-months-unlawfully-selling-ghost-guns. Likewise, in the District of Massachusetts another defendant was sentenced to 30 months in prison coupled with two years of supervised release for manufacturing and selling two Glock style ghost guns to an undercover officer. U.S. Attorney's Office for the District of Massachusetts, September 16, 2021, https://www.justice.gov/usao-

ma/pr/connecticut-man-sentenced-firearm-trafficking. This court should consider and weigh this factor.

## V. CONCLUSION

The government agrees that the PSR's Guidelines calculations are correct. For the reasons stated above, the government asks the Court to impose a sentence of 57 months incarceration coupled with 3 years of supervised release.

                                                Respectfully submitted,

                                                Jessica D. Aber
                                                UNITED STATES ATTORNEY

By:                 /s/
                                                Matthew J. Heck
                                                Special Assistant United States Attorney
                                                New York State Bar No. 5313341
                                                United States Attorney's Office
                                                World Trade Center, Suite 8000
                                                101 W. Main Street
                                                Norfolk, Virginia 23510
                                                Office Number - 757-441-6331
                                                E-Mail Address – matthew.heck@usdoj.gov

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of March, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

>Keith L. Kimball
>150 Boush Street
>Suite 403
>Norfolk, Virginia 23510
>(757) 457-0800

I further certify that on this 17th day of March, 2022, I caused a true and correct copy of the foregoing Position of the United States with Respect to Sentencing Factors to be e-mailed to the following:

>Shannon E. Gerard
>United States Probation Officer
>600 Granby Street, Suite 200
>Suite 200
>Norfolk, Virginia 23510
>(757) 222-7300

>/s/
>Matthew J. Heck
>Special Assistant United States Attorney
>New York State Bar No. 5313341
>United States Attorney's Office
>World Trade Center, Suite 8000
>101 W. Main Street
>Norfolk, Virginia 23510
>Office Number - 757-441-6331
>E-Mail Address – matthew.heck@usdoj.gov